JAMES SLOCUM and Wife v. EDWARD B. BRACY and Another.[1]

June 10, 1896.

Nos. 9827—(30).

**Lost Instrument—Secondary Evidence.**

A party seeking, upon the trial of an action, to introduce secondary evidence of the contents of an alleged lost instrument, must not only give some evidence that it once existed, but also that a bona fide and diligent search has been unsuccessfully made for it at the place where it was most likely to be found. Whether sufficient search has been made depends much on the nature of the instrument and the circumstances of the case, as a comparatively useless writing may be presumed to have been lost or destroyed on proof of much less search, and after a much shorter time, than an important one.

**Same—Receipt in Full.**

*Held,* under the evidence in this case, as to what efforts had been made to find a receipt in full of all accounts and demands to date, said to have been executed by one of these plaintiffs and delivered to the defendants, and to have been lost, that the trial court failed to exercise a sound legal discretion when it admitted, over plaintiff's objection, oral evidence of the contents of the receipt.

Appeal by plaintiffs from a judgment of the district court for Hennepin county, in favor of defendant Bracy, entered in pursuance of the findings and order of Russell, J. Reversed.

*Fletcher, Cairns & Rockwood,* for appellants.

*Edgerton & Wickwire* and *T. E. Byrnes,* for respondent.

COLLINS, J. This action was brought on the same contract and to enforce the same liability as was that between the same parties, reported in 55 Minn. 249, 56 N. W. 826, wherein the facts fully appear. In the present action, in which defendant Letcher was not served with a summons, nor did he appear, a trial was had before the court without a jury, and on its findings of fact judgment was ordered against plaintiffs.

As might be expected, the real question in issue was whether plaintiffs accepted the quitclaim deed, executed and delivered by a third person, as a full compliance with defendants' contract to con-

[1] Reported in 67 N. W. 843.

vey, under which plaintiffs could have required a warranty deed executed in due form by both defendants. This was the pivotal point in the case. Several of the assignments of error are directed to certain rulings of the court when receiving the proofs, while others go to the sufficiency of the evidence to support some of the findings of fact. As we regard the case, the assignments last mentioned need not be considered; for, in our opinion, in at least one instance, there was an erroneous and prejudicial ruling of the court, whereby improper evidence was admitted over plaintiffs' objection. We refer to the ruling whereby the court allowed secondary evidence to be given of the contents of a receipt said to have been executed by James Slocum, one of the plaintiffs, and to have been delivered to the defendants April 6, 1890, at the time of an alleged settlement between the parties.

According to plaintiffs' testimony, and it virtually stood admitted by defendant Bracy, the quitclaim deed had been the subject of a great deal of discussion between these parties from about the time it came into plaintiffs' hands, in October, 1888, until the latter delivered—conditionally, they claim—a deed of their store property to defendants, about May 6, 1890. It was claimed by plaintiffs that they never received the quitclaim deed as a compliance with defendants' contract, but conditionally only,—the condition being that a government patent had been issued or would be issued covering the land,—and that one or both of the defendants repeatedly promised them that, if they retained the deed, and a patent should not be issued, defendants would make good the loss by paying the amount at which plaintiffs took the land, or by conveying to them another quarter section, and that this condition was the subject of frequent conversations down to the delivery of plaintiffs' deed, in May, 1890; and, further, that this condition was insisted upon and was attached to the delivery of the deed last mentioned. That for some months prior to April, 1890, all parties knew that the government refused to issue a patent, was undisputed. Nor was it disputed that, after the fact was known to both parties, plaintiffs insisted that the loss must be borne by the defendants, and must be made good by them. And it was also shown that, after plaintiffs received the quitclaim deed, and soon after the defect in the title was discovered, defendant Bracy acknowledged that the defendants

had failed to comply with their agreement to convey, insisting, however, that the default must be made good by Letcher, not by himself.

Now, if, during this time, during the period in which plaintiffs claim they were holding this quitclaim conditionally and as agreed upon, and solely because of defendants' promise, if they would so hold it, reimbursement should be made in case the land was lost, the plaintiff James Slocum executed and delivered to defendants a receipt in full of all accounts and demands to date, it would be strong proof that the claim of a conditional acceptance of the quitclaim deed, and the claim that defendants were to make good the loss, if any, were without foundation.    In a' close case upon this question, it would have a direct bearing upon the issue, and, to say the least, would be very convincing evidence.

As before indicated, the trial court permitted defendants to show by secondary evidence the contents of a receipt of this character, said to have been signed by James Slocum, and to have been delivered to defendant Bracy at the store, which was at Norwood, Carver county, April 6, 1890, when the latter gave his check for a balance due plaintiffs on account of the trade and some other small matters between them, and at which time Bracy testified that he received plaintiffs' deed of the store property.   After testifying that Slocum gave him a receipt on this occasion, Bracy stated that he gave the receipt to a clerk in the store, who put it in the safe; that about three months afterwards the store and the safe were sold to another party who took possession, and had since sold out to another man; that the clerk lived at Lester Prairie, in this state; that the witness had written to him about the receipt two or three times, but had received no reply; that he had also written to Letcher, who resided in Alabama, but had been informed that the receipt was not in his possession; that he (the witness) had not looked into the safe, did not think it worth while, and had simply inquired of the party to whom he had sold,—this party himself having sold out the property soon after obtaining it.   The question is, giving to the trial court a reasonable discretion on the subject of its ruling, was this testimony sufficient to warrant the substitution of oral for written evidence of the contents of the alleged lost instrument,—James Slocum having denied that it ever existed.

A party seeking to introduce secondary evidence of the contents of such an instrument must not only give some evidence that it once existed, but also that a bona fide and diligent search has been unsuccessfully made for it at the place where it was most likely to be found. Whether sufficient search has been made depends much on the nature of the instrument and the circumstances of the case, as a comparatively useless writing may be presumed to have been lost or destroyed on proof of much less search and after a much shorter time than an important one. In this case we have an instrument, said to be lost, which, under the circumstances, was extremely important to defendants; for, if produced, it would be very persuasive proof that the quitclaim deed had been unconditionally accepted and retained. If executed at all, it was at a time when, for several months, plaintiffs, according to their testimony, had again and again, and unremittingly, insisted that the deed was not accepted, except upon condition, and that by reason of the failure of title they had a claim and demand upon the defendant for over $1,200. It was a very important instrument, and its value must have been fully appreciated by the defendants. Another writing, the statement, of which we shall speak hereafter, delivered to defendants at the same time, but of much less importance, was carefully preserved, and was produced upon the trial. With this condition of affairs, we think the court failed to exercise a sound legal discretion when it allowed the witness to state the contents of the receipt. It is apparent that he had not made a bona fide or diligent search for the paper. According to his testimony, it had been put in the safe by his clerk, and some effort should have been made to find it there. The witness seems to have been industrious in attempting to find it elsewhere, but he should have been diligent in searching for it in the place where it was last known to be. The fact that he did not think it worth while to look for it there was no excuse for neglecting all attempts to find it there.

But it is contended that, as the witness had testified to a settlement on April 6, and produced a statement on the trial showing the condition of the account between the parties, made by Slocum on that same day, no prejudice could have resulted from the oral evidence as to the contents of the receipt. We cannot concede this. Slocum admitted a settlement on the basis of a perfect title to a quar-

ter section which he was promised, or the payment of its value in money; but he denied a settlement upon the basis of a formal, unconditional acceptance of the quitclaim deed in lieu of the deed provided for in the contract. He admitted that he made this statement, but claimed it was made under the same conditions as the settlement; and, upon an examination of the statement (defendants' Exhibit 1), in connection with Slocum's testimony, it seems that it was merely a transcript from entries made upon his books of account, wherein he kept a record of this and other transactions with defendants. The first charge, made September 11, 1888, upon the debit side, was the value of the merchandise, store fixtures, store, dwelling, and lot, and the warehouse and scales mentioned in the contract executed the next day, and the first item of credit was a draft for $1,000, upon September 11. And upon this same day, September 11, 1888, defendants were accredited the agreed value of the seven quarter sections of land, although none of it was then conveyed to plaintiffs. We cannot attach any great importance to the statement, under all of the circumstances. And the testimony that a settlement was made April 6, 1890, has much less potency than competent evidence of the execution and delivery of a receipt in full of all amounts and demands to that date would have. A new trial must be had.

Judgment reversed.